## Richmond

PAUL L. SHEEK, J. C. STORTZ, SAM BAUGERSS, J. O. CARRINGTON AND
ROBERT MALLISON v. CITY OF NEWPORT NEWS, A MUNICIPAL
CORPORATION IN THE COMMONWEALTH OF VIRGINIA, AND W. E.
LAWSON, JR., CITY MANAGER.

October 8, 1973.

Record No. 8167.

Present, All the Justices.

*Herbert V. Kelly (H. Duncan Garnett, Jr.; Jones, Blechman, Woltz
& Kelly,* on brief), for appellants.

*Panos A. Yeapanis, City Attorney for the City of Newport News
(Frank M. Morton, III, Assistant City Attorney for the City of New-
port News,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the court.

Petitioners Paul L. Sheek, J. C. Stortz, Sam Baugerss, J. O. Carring-
ton and Robert Mallison appeal from a final decree entered June 7,
1972, by the trial court dismissing their petition to enjoin the City of
Newport News and its City Manager from terminating garbage and
refuse collection service rendered to them. A preliminary injunction
entered January 26, 1972 requires the City to continue this service
during the pendency of this appeal.

The Newport News City Council approved, effective February 1, 1972, Ordinance No. 1563 adding Article III, entitled "Required Containers", to Chapter 20 of the City Code. Article III requires the "operator of the premises" of all "Business and Commercial Establishments" to provide "storage for collection of refuse in dumpmaster-type containers"; defines "Business and Commercial Establishments" to include "[t]he rental of mobile home spaces and apartment units"; and provides that "failure to comply with the requirements of this Article shall operate to terminate any garbage and/or refuse collection service provided by the City."

Petitioners own and live in mobile homes located on spaces which they rent from the owner and operator of Warwick Mobile Home Estates, a mobile home park with streets which are paved, curbed and guttered. Each home is connected to municipal sewer and water systems and is individually served by gas, oil and electric companies. Bills for the use of these services are paid directly by individual residents. Although the homes, prefabricated in two parts, were "mobile" when moved to their lots, once joined and fixed in place they will remain immobile until cut in half, disconnected from the utilities, and loaded on wheels. In design, construction and use they are comparable to conventional single-family detached dwellings of equivalent size.

The City operates a garbage and refuse collection service serving, without direct charge, all business, commercial, industrial and residential areas within the municipality. In residential areas, including mobile home parks, the City has been collecting refuse by hand from conventional trash containers placed adjacent to individual residences. Under the new ordinance collection is to be made mechanically from larger dumpmaster containers located at central points in or near mobile home parks, "private schools, churches, nursing homes, homes for the aged, convalescent homes, hospitals, hotels, social, fraternal, civic or educational clubs, health clubs, boarding houses, lodging houses and motels, and all other institutions of a similar nature." In some mobile home parks it may be necessary for the most remote residents to transport their own garbage "nearly a half mile" to the nearest dumpmaster.

Petitioners contend that, as it affects residents of mobile homes located in mobile home parks, Ordinance No. 1563 constitutes an unreasonable, arbitrary, discriminatory, and invalid classification and is an unlawful exercise of the police power. The City contends that the ordinance's classification of business users of the garbage collection

service and non-business users is reasonable and that the ordinance is a lawful exercise of the police power.

The ordinance is presumptively valid. In *Kisley* v. *City of Falls Church*, 212 Va. 693, 697, 187 S.E.2d 168, 171-72 (1972), we stated:

> "... There exists ... a presumption favoring the validity of municipal ordinances and the presumption governs unless it is overcome by unreasonableness apparent on the face of the ordinance or by extrinsic evidence which clearly establishes the unreasonableness. ...
>
> "Classifications found within an ordinance carry with them the same presumptions and burdens, and are not in and of themselves discriminatory. [Citation omitted.]"

Unless clear and convincing proof demonstrates that an ordinance is arbitrary and unreasonable, the ordinance must be upheld. "[I]f the question of reasonableness is fairly debatable, [we will] not substitute [our] judgment for that of the legislative body charged with the primary duty and responsibility of deciding the question. [Citation omitted.]" *Martin* v. *City of Danville*, 148 Va. 247, 250, 138 S.E. 629, 630 (1927).

The City of Newport News had ample justification for an ordinance which requires the operators of businesses to provide dumpmaster containers. The use of these containers promotes the public welfare by reducing the cost of municipal garbage collection.

The City Council could reasonably place mobile home parks, motels and apartment buildings in a different classification from neighborhoods of single-family dwellings for purposes of garbage collection. It is impractical for the owner or occupant of every single-family residence to acquire a dumpmaster container because the containers are expensive and are designed for the greater volume incident to multi-family and business use. In a business establishment, such as a mobile home park or an apartment complex, there is a centralized management which can purchase necessary dumpmasters, locate them conveniently, and allocate the cost fairly among the residents. In conventional residential neighborhoods, however, acquisition of dumpmasters would be left to the action of individual citizens. It would be reasonable for the City Council to conclude that residential areas that are not operated as businesses should be exempted from the ordinance because they typically contain no central authority to provide for the efficient acquisition and use of dumpmasters.

The City Council could also have concluded that residents of apartments and mobile home parks would incur less inconvenience than other citizens from the use of dumpmasters. Mobile home parks and apartment buildings characteristically have higher population densities than neighborhoods of conventional single-family houses. The City Council could reasonably have believed that the average distance which a person would have to walk between his residence and a dumpmaster would be less in apartments and mobile home parks than in other residential areas. It is not unreasonable for the City to require dumpmasters only for the types of neighborhoods whose residents would be least inconvenienced by this method of garbage collection.

It is undoubtedly true that in some conventional residential areas cooperating homeowners could purchase and allocate dumpmasters efficiently. It is also true that the population density in some conventional neighborhoods may be greater than in some mobile home parks. But legislative classifications are not required to be perfect. The United States Supreme Court has stated:

". . . If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' . . . 'The problems of government are practical ones and may justify, if they do not require, rough accommodations —illogical, it may be, and unscientific.' . . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' [Citations omitted.]" *Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970). (State Welfare statute held not to violate Fourteenth Amendment to United States Constitution.)

Here, the City has chosen to furnish garbage collection services to the public. In so doing, it has said that as to one segment of the garbage-generating public, occupants of conventional single-family residences, it will furnish individual collection services. But as to the other segment, the operators of businesses within the City, it has proclaimed that it will provide only central-point collection services. That the customers of those businesses, be they renters of apartments or of mobile home spaces, might not receive the same services as occupants of single-family residences is immaterial. The distinction between the two segments is based upon considerations of public welfare. So long

as all within the same segment are treated alike, and the ordinance under review has that even-handed effect, there is no illegal discrimination.

We hold that Ordinance No. 1563 is valid because the classification established therein is reasonably related to considerations of public welfare. Accordingly, the final decree entered by the trial court dismissing with prejudice the petition for an injunction will be

*Affirmed.*

POFF, J., dissenting.

Most respectfully, I dissent.

I agree with the principles of law the majority expound. I disagree with the majority's application of those principles to the facts of this case. I would hold that Ordinance No. 1563, insofar as it affects residents of mobile homes located in mobile home parks such as Warwick Mobile Home Estates,[1] fails the Virginia test of ordinance classification validity most recently reaffirmed in *Kisley* v. *City of Falls Church*, 212 Va. 693, 697, 187 S.E.2d 168, 172 (1972), that " 'the classification is natural and substantial and bears a reasonable relationship to the evil sought to be controlled, . . .' [citation omitted]."

In *National Linen Service Corp.* v. *City of Norfolk*, 196 Va. 277, 281, 83 S.E.2d 401, 404 (1954), we said that "the authority conferred under a general or implied grant of power must be exercised reasonably, in good faith, and bear a real and substantial relation to the public health, safety, morals, or general welfare of the city's inhabitants." The power the City exercised here was not one expressly conferred by the Code or the City's charter; it was one implied from its general police powers. Nor did the exercise of this implied power bear any "relation to the public health"; the testimony of the City's own director of public works, who has general responsibility for garbage collection, shows that the garbage-related health problem in mobile home parks is no different than that elsewhere.

The City justifies the ordinance on the grounds that it bears "a real and substantial relation to the . . . general welfare of the city's inhabi-

---

[1] A mobile home such as that described in the majority opinion is clearly distinguishable from a "trailer" which, for purposes of licensing the operation of trailer camps, trailer parks and trailer parking, is defined to be "any vehicle designed or used or maintained for use as a conveyance upon highways, so designed and so constructed as to permit occupancy thereof as a temporary dwelling or sleeping place for one or more persons." Code § 35-64.3 (Cum. Supp. 1973).

tants" because dumpmasters reduce municipal costs. The majority find that "[t]he use of these containers promotes the public welfare by reducing the cost of municipal garbage collection." They declare the ordinance valid because it is "reasonably related to considerations of public welfare." But, assuming that the designation of certain classes to bear the brunt of budgetary economies in the name of the "public welfare" is a legitimate exercise of the City's police power, the issue here is not whether the ordinance, in light of the purpose it seeks to achieve, is reasonable. The issue is whether, in light of the purpose of the ordinance and its *operative effect* upon residents of mobile home parks, the classification of "[t]he rental of mobile home spaces" as a business is reasonable.

"The test of reasonableness of classification is said to be whether it embraces all of the classes to which it relates. The basis of the classification involved must have a direct relation to the purpose of the law, and must present a distinction which renders one class, in truth, distinct or different from another class." *City of Newport News* v. *Elizabeth City County*, 189 Va. 825, 841, 55 S.E.2d 56, 65 (1949).

If dumpmasters located in mobile home parks would save money, dumpmasters located in other residential neighborhoods would save money. Indeed, the savings elsewhere would be greater; the City's director of public works testified that individual hand-collection requires more time per resident in several conventional residential neighborhoods than in mobile home parks. When the City, in the name of "economy", requires the use of dumpmasters where they achieve the smaller economy but not where they achieve the greater economy, thereby thrusting upon some a burden others similarly situated in relation to garbage collection economies are spared, the "implied grant of power" is not "exercised reasonably" within the language of *National Linen Service Corp.*

The City contends, and the majority agree, that the ordinance structures only two classes of users of the garbage collection service, viz., business users and non-business users, and that such a legislative classification, in other contexts, has routinely been upheld as reasonable. But in operative effect, the ordinance structures more than two classes. No matter what the language of the ordinance pretends to do, the evidence shows that the functional consequence would be to cre-

ate four classes of users, viz., a business class, a residential class paying rent on lots to mobile home park owners, a residential class paying rent on detached dwellings and lots in a conventional neighborhood, and a residential class paying for title to detached dwellings and lots in a conventional neighborhood. The business class is altogether distinguishable from the three residential classes, and as between them, a legislative classification would be reasonable. But as between the mobile home residential class and the latter two residential classes, the only significant distinction is that the residents of the several classes pay different payees for the right to live in their homes. Insofar as garbage collection economies are concerned, such a distinction bears no "real and substantial relation to the public health, safety, morals, or general welfare of the city's inhabitants." Nor is the legislative classification upon which it is based "natural and substantial" within the test of *Kisley*. Nor does this distinction render one class "in truth, distinct or different from another class" within the test of *Elizabeth City County*.

Apparently recognizing the weakness of this distinction, the majority suggest supplemental differentiae. They say that population density is "characteristically . . . higher" in mobile home parks and that this justifies the greater burden the ordinance imposes upon residents there. But the evidence at trial indicated that there are conventional residential neighborhoods in the City where the population density is higher than that in Warwick Mobile Home Estates and where, presumably, the round trip to the dumpmaster would be shorter.

The majority seek further to embellish the distinction on the grounds that, unlike conventional residential communities, mobile home parks have a "centralized management" which makes collective purchases of dumpmasters and allocation of purchase costs feasible. But the record reflects that, in addition to mobile home parks, there are other large residential subdivisions in the City where residents rent from a common owner and where, presumably, the owner or property-management firm could arrange purchases and cost allocations as efficiently as owners of mobile home parks.

In suggesting "population density" and "centralized management" as distinctions justifying different residential classifications to promote garbage collection economies, the majority overlook the crescent phenomenon of the townhouse development. Such developments have high population densities and, typically, centralized managements which allocate among townhouse owners the costs of exterior main-

tenance of houses and lots. Yet, it does not appear that they would be required by Ordinance No. 1563 to use dumpmasters.

To be sure, municipal ordinances are presumptively valid, and when the question of reasonableness is fairly debatable, courts ought not substitute their judgments for those of legislative bodies. But as we said in *National Linen Service Corp.* v. *City of Norfolk, supra,* 196 Va. at 281, 83 S.E.2d at 404, "[w]hether a particular ordinance enacted pursuant to a general grant of power is arbitrary and unreasonable, and therefore void, is a question for the court, and there is no specific formula by which its reasonableness can be tested."

When, for the sake of economy in the distribution of a city's services, citizens similarly situated are segregated by ordinance into multiple classes, when the dissevered classes are subjected to different rules and burdens and accorded different rights and benefits, and when the segregation and different treatment are based on no factual distinction but that the citizens pay different persons for the right to live in their homes, I would hold that the legislative classification is so unreasonable as to be beyond the ambit of fair debate.

I believe the judgment should be reversed and, to the extent Ordinance No. 1563 affects residents of mobile home parks, the preliminary injunction granted by order entered January 26, 1972 should be made permanent.