Richmond

JAMES D. DUKE, JR.
v.
COUNTY OF PULASKI

October 6, 1978.

Record No. 780121.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

Philip M. Sadler; Gary C. Hancock (Gilmer, Sadler, Ingram, Sutherland & Hutton, on brief) for appellant.

R. Glennwood Lookabill, Assistant Commonwealth's Attorney, for appellee.

COCHRAN, J., delivered the opinion of the Court.

James D. Duke, Jr., was charged with violation of the Pulaski County Unlicensed Automobile License Tax Ordinance. The trial court, sitting without a jury, found Duke guilty and imposed upon him a fine of $50. On appeal, Duke contends, as he did in the trial court, that the enabling statute, Code § 15.1-27.1, and the Pulaski County ordinance enacted pursuant thereto, were unconstitutionally applied to him in violation of his rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution[1] and under Article I, Section 11 of the

---

[1] " . . . nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Virginia Constitution.[2] Duke also challenges the sufficiency of the evidence.

The enabling statute, enacted as Acts 1970, c. 380, provided:

"**§ 15.1-27.1. Ordinances imposing license taxes on owners of certain automobiles.** — The governing body of any county, city or town in this State may adopt an ordinance imposing a license tax, in an amount not exceeding ten dollars annually, upon the owners of automobiles which do not display current license plates and which are not exempted from the requirements of displaying such license plates under the provisions of §§ 46.1-42 through 46.1-49 and 46.1-119 and 46.1-120, are not in a public dump, in an 'automobile graveyard' as defined in § 33-279.3[3] or in the possession of a licensed junk dealer or licensed automobile dealer. Nothing in this section shall be applicable to any vehicle being held or stored by or at the direction of any governmental authority, to any vehicle owned by a member of the armed forces on active duty or to any vehicle regularly stored within a structure."[4]

Pursuant to the enabling statute, the Board of Supervisors of Pulaski County approved the local ordinance, effective November 27, 1973, which read in pertinent part as follows:

"ARTICLE I
LICENSE TAX

"1-1 There is hereby imposed an annual license tax of ten dollars ($10.00) per automobile on owners of automobiles located in Pulaski County which do not display current license plates and which are not exempted from the requirements of displaying such

---

[2] "That no person shall be deprived of his life, liberty, or property without due process of law; . . . and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged . . . ."

[3] Code § 33-279.3 was repealed by Acts 1970, c. 322. The applicable section is now § 33.1-348, in which "automobile graveyard" is defined as "any lot or place which is exposed to the weather and upon which more than five motor vehicles of any kind, incapable of being operated, and which it would not be economically practical to make operative, are placed, located or found." Code § 33.1-348 (b) (2).

[4] This statute was amended by Acts 1977, c. 557, to increase the maximum license tax from ten dollars to fifty dollars, and to require inclusion in local ordinances of a mandatory exemption from the tax for any vehicles stored on private property for not more than 60 days for the purpose of removing parts for the repair of another vehicle, but these amendments were not in effect at the time Duke was charged with violating the Pulaski County ordinance.

license plates under the provisions of Sections 46.1-42 through[5] 46.1-119 and 46.1-120, Code of Virginia of 1950, as amended, are not in a public landfill, in an automobile graveyard as defined in Section 33.1-348, Code of Virginia of 1950, as amended, or in the possession of a licensed junk dealer or licensed automobile dealer. This tax will be due and payable on March 15, of each year beginning in 1974 and will not be considered in default if paid on or before April 15th of the year in which due.

"1-2 Nothing in this Article shall be applicable to any vehicle being held or stored by or at the direction of any governmental authority, to any vehicle owned by a member of the armed forces on active duty or to any vehicle regularly stored within an enclosed structure."

The facts are undisputed. Charles T. Goins, the official charged with responsibility for enforcing the ordinance, found that Duke owned four unlicensed vehicles parked on private property on which Duke operated a business known as Jim's Steak House. Goins gave Duke seven days to comply with the ordinance, and, when Duke failed to act, caused a warrant to be issued against him for the violation.

Duke described the four unlicensed vehicles as a 1960 Buick convertible, a 1961 Chevrolet pickup "special catering truck", a 1950 Ford panel truck, and a refrigerated milk truck. He denied that he had abandoned any of the vehicles. It was his testimony that he had repossessed the Buick from a defaulting purchaser and was holding it for a cash sale. The Chevrolet pickup truck, Duke said, was fitted out to transport sandwiches, soft drinks, and coffee for sale at retail. Although Duke was in the business of selling sandwiches only at wholesale, he had hoped to use the truck but had been unable to do so because of a shortage of help. He had refused many offers to buy the Ford panel truck, and he planned to work on it during the year with his brothers and restore it to operable condition. The refrigerated milk truck had been purchased from a creamery and Duke was using it to store beer for sale in his restaurant. Duke acknowledged that he had not purchased licenses for the four vehicles and that he did not intend to comply with what he considered to be a discriminatory ordinance.

---

[5] It appears that the words "46.1-49 and" should follow the word "through" but were inadvertently omitted. Cf. Code § 15.1-27.1, supra.

Goins conceded that the automobile and the pickup truck were in operable condition and that if they were his he "would hate to junk them." He could not express an opinion as to the condition of the panel truck because he had not examined it as carefully as the other vehicles.

Duke says that the statute and the ordinance were enacted for the legitimate purpose of eliminating "junk" vehicles that were not located in junkyards or automobile graveyards. He points specifically to the guidelines approved by the Board of Supervisors for administering the Unlicensed Vehicle Tax Ordinance in which the ordinance is also referred to as the "Junk Car Licensing Ordinance". Duke maintains that the statute and ordinance, although presumptively valid, are overbroad. It is his contention that the classification of "junk" vehicles to comprise, subject to the designated exceptions, all unlicensed vehicles, including the operable and operating,[6] is unreasonable and void.

While all junk vehicles may be unlicensed, Duke argues, all unlicensed vehicles are not junk, as evidenced by his own vehicles and by the express exception provided in the law for the unlicensed vehicles of servicemen on active duty. Duke relies upon the familiar principle that a classification must be reasonable and must "rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike". *Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 (1920).

In Equal Protection cases classifications based upon alienage, race, or national origin are inherently suspect and subject to close scrutiny. *Graham* v. *Richardson,* 403 U.S. 365, 371-72 (1971). When the classification is not suspect it is permissible if the governmental objective is "legitimate" and the classification bears a "reasonable" or "substantial" relation thereto. *Arlington County* v. *Richards,* 217 Va. 645, 648, 231 S.E.2d 231, 233, *rev'd per curiam, 434 U.S. 5 (1977).*

*In Arlington County* a local ordinance required the County Manager to determine which residential areas were especially crowded with parked cars from outside the neighborhood and to issue free parking permits to residents of those areas, to persons doing business with residents, and to some visitors, and prohibited

---

[6] It should be noted that Code § 15.1-11.1 (a) authorizes local governing bodies to prohibit the keeping of inoperative vehicles, except within fully enclosed buildings or structures, upon any property zoned for residential, commercial, or agricultural purposes.

parking therein by all others. We held that this ordinance facially violated the Equal Protection Clause because the discrimination between residents and nonresidents bore no reasonable relation to the ordinance's stated objectives. However, the United States Supreme Court disagreed, and reversed and remanded the case for further proceedings, holding that the Constitution does not presume distinctions between residents and nonresidents in a neighborhood to be invidious, that the Equal Protection Clause requires only that the distinction drawn by the ordinance "rationally promote the regulation's objectives", and that the ordinance on its face met this test. *County Bd. of Arlington Cty., Va. v. Richards,* 434 U.S. 5, 7 (1977). And in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, *reh. denied,* 429 U.S. 873 (1976), the Supreme Court, reviewing an ordinance of the City of Detroit providing that "adult" motion picture theatres may not be located within 1,000 feet of two other zoning districts, held that the "city's interest in the present and future character of its neighborhoods adequately supports its classification of motion pictures". *Id.* at 72. The Ordinance was upheld against a First Amendment challenge and was also held not to violate the Equal Protection Clause of the Fourteenth Amendment. These cases clearly demonstrate that wide discretion may be exercised by a governing body in establishing a non-suspect classification.

It is apparent in the present case that the classification in issue is not based upon religious conviction, race, color, sex, or national origin in violation of the nondiscrimination clause of Article I, Section 11 of the Virginia Constitution. Moreover, it is equally clear that, as the classification is not based upon alienage, race, or national origin, it is not inherently suspect and subject to the strict standards applicable to such classifications under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Therefore, if the classification has some reasonable basis and bears a reasonable relationship to the legislative objective, the governmental authority may treat different classes in different ways. *Reed v. Reed,* 404 U.S. 71, 75 (1971). The classification will not be held to be unconstitutional merely because it results in some inequality or some discrimination. *Dandridge v. Williams,* 397 U.S. 471, 485 (1970); *Sheek v. City of Newport News,* 214 Va. 288, 291, 199 S.E.2d 519, 522 (1973); *see Archer and Johnson v. Mayes,* 213 Va. 633, 638, 194 S.E.2d 707, 710-11 (1973).

■ As Duke concedes that the governmental objective of the ordinance is permissible, the answer to the Equal Protection challenge depends upon a determination whether the classification, in its application to Duke, bears a reasonable relation to the governmental objective. Is Duke treated substantially the same as others similarly situated?

There are essentially two different types of classification created by the ordinance which Duke challenges. First, the ordinance draws a line between vehicle owners whose vehicles are licensed and those whose vehicles are not licensed. The ordinance then creates a second classification by separating and exempting certain categories of unlicensed vehicles from all other unlicensed vehicles.

It is true, as Duke says, that not all unlicensed vehicles are junk vehicles. However, it is also true that unlicensed vehicles are much more likely to be junk vehicles than are licensed vehicles. And unlicensed vehicles are far more likely to create safety, health, and aesthetic problems than are licensed vehicles. This rationale apparently furnished the basis upon which the legislature drew a distinction between these two classes of vehicles, and it appears that this distinction is neither unreasonable nor arbitrary but is directly related to the objective sought to be accomplished by the ordinance.

Duke's argument that the ordinance is overbroad was answered in *Sheek* v. *City of Newport News, supra,* 214 Va. at 291, 199 S.E.2d at 522, quoting *Dandridge* v. *Williams, supra,* 397 U.S. at 485, where it was stated:

> " ... If the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality' . . . . 'The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific.' . . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'"

In *Sheek,* an ordinance provided for individual garbage and trash collection service for occupants of conventional single-family residences, but required operators of businesses to provide central-point collection containers for their customers. These customers included tenants of apartment buildings and occupants of mobile home spaces, some of whom lived almost a half mile from a central collection point. Certain mobile home residents challenged the validity of the ordinance as applied to them. However, we held that

mobile home parks and apartment buildings generally have higher population densities than neighborhoods of conventional single-family residences, and that the local governing body reasonably could have concluded that residents of mobile home parks would incur less inconvenience than other citizens from the use of central-point collection facilities. Although we recognized that exceptions to the general rule could be found which resulted in some hardship within the classification, we noted that " . . . legislative classifications are not required to be perfect". *Id.* at 291, 199 S.E.2d at 522.

Duke urges, however, that even if the classifications of licensed and unlicensed vehicles are reasonably based, invidious discrimination nevertheless results from the numerous exemptions granted owners of certain unlicensed vehicles. The ordinance specifically exempts vehicles of servicemen on active duty, vehicles stored in structures, vehicles in public landfills or automobile graveyards, or in the possession of licensed junk dealers or licensed automobile dealers, and vehicles stored by or at the direction of any governmental authority. It also incorporated by reference numerous other exceptions for certain vehicles that may be used for specified purposes without being registered. These include vehicles used in business for farming purposes (Code § 46.1-45), vehicles moved on temporary permits (Code § 46.1-42 - 46.1-44), vehicles used in mining or quarrying operations (Code § 46.1-45.1), golf carts (Code § 46.1-45.2), vehicles of volunteer fire departments and similar organizations (Code § 46.1-46), vehicles owned by the State or local political subdivisions and used for public purposes (Code § 46.1-49), and vehicles moved for not more than 25 miles on the public highway, from manufacturer to place of shipment or delivery (Code § 46.1-119), or from place of shipment to a dealer (Code § 46.1-120).

Duke maintains that it is discriminatory to exempt a vehicle used in the farming business and to tax the milk truck used in his business of selling beer, to exempt an automobile dealer's car that is offered for sale and to tax Duke's automobile that is also held for sale, and to exempt a vehicle that is stored in an enclosed structure and to tax his vehicles that are not so hidden from public view. But such discrimination is unconstitutional only if the classifications created are not reasonably related to the objective sought to be accomplished by the ordinance.

In *Kisley v. City of Falls Church*, 212 Va. 693, 187 S.E. 2d 168, *appeal dismissed*, 409 U.S. 907 (1972), the constitutionality of a local

ordinance prohibiting the operation of a massage salon, bath parlor, or any similar type business, where the service rendered to a customer was by a person of the opposite sex, was attacked. Although it was argued that this ordinance was discriminatory in that it specifically exempted barber shops and beauty parlors, we held that there was a reasonable basis for the exemption because of the fundamental difference between the barber shop business and the massage parlor business.

Similarly, in *Carpel v. City of Richmond,* 162 Va. 833, 175 S.E. 316 (1934), we upheld the validity of the following city ordinance reading in part (162 Va. at 836, 175 S.E. at 316):

> "Every person, firm or corporation, other than a distributor or vendor of motor vehicle fuels and petroleum products, a farmer, a dealer in forest products, a producer or manufacturer, who or which shall sell and deliver at the same time, or offer to sell, in the city of Richmond, other than at a definite place of business, goods, wares, manufactured products or merchandise to licensed dealers or retailers, shall pay a license tax of $200 for each vehicle so used in the conduct of said business . . . ."

A wholesale merchant, engaged in the business of selling perishable food stuffs to retailers, contended that the ordinance violated the Equal Protection Clause in that the exemptions provided were wholly arbitrary and unreasonable. However, we rejected this challenge and held that each of the exceptions was based upon a rational foundation. For example, we noted that " . . . farmers constitute a class and may be the beneficiaries of special legislation", and that "producers and manufacturers are ordinarily taxed upon capital employed and so make up a special class . . . ." *Id.* at 843, 175 S.E. at 319.

Thus, we have long recognized that classification of those engaged in the business of farming in a separate category from those engaged in general business activities is reasonable and permissible. Hence, we find no invidious discrimination against Duke from the exemption accorded motor vehicles used for agricultural purposes. Because of the limited number and use of such vehicles upon the highways, it is reasonable to assume that they would not present significant junk problems. Nor do we find it unreasonable or arbitrary that an exemption is provided for the vehicles of service-

men on active duty. Such service personnel may be required by higher authority to be away from their homes for extended periods of time. During such periods, the vehicles of these servicemen might remain idle and unused, but such vehicles are unlikely to pose safety or aesthetic problems as junk vehicles. Moreover, servicemen have been made the subject of a separate classification for exemption from operator's licensing requirements (Code § 46.1-354), and for special time provisions for the renewal of operator's licenses (Code § 46.1-382).

The exemption for vehicles stored in structures is similar to that provided in Code § 15.1-11.1 pertaining to the elimination of inoperative vehicles. It is apparent that the exemption is prompted by aesthetic considerations and is consistent with the legislative purpose to eliminate unsightly junk vehicles from public view. The fact that this exemption would not be applicable to the newest and highest priced unlicensed automobile kept outside a structure does not, as Duke argues, invalidate the exemption. It merely demonstrates that others similarly situated are treated the same as Duke.

Automobile dealers are extensively regulated by the Virginia Motor Vehicle Dealer Licensing Act, Code §§ 46.1-515, *et seq.* It is reasonable to infer that such dealers will not keep in public view unusable, dilapidated, or junk vehicles. Indeed, Code § 46.1-550.3 requires that dealers have all vehicles inspected at an official inspection station prior to sale at retail, thus assuring operability and compliance with safety requirements. Therefore, we do not agree with Duke that the ordinance results in invidious discrimination against him because of the exemption provided for vehicles offered for sale by automobile dealers.

The other exemptions included in the ordinance are also reasonable when considered in light of the governmental objective. They are based upon reasonable inferences that the exempted vehicles will not deface the landscape as derelicts but are operable and are serving useful purposes.

As a rational basis exists to justify the classifications created by the exemptions, and as these classifications reasonably relate to the objective of the ordinance, the ordinance must be upheld. That every possible exemption which could be justified is not provided for does not invalidate the ordinance in its application to one occupying a non-exempt status.

As to Duke's Due Process claim we have stated that the

requirements of due process are satisfied if laws have reasonable relation to a proper purpose and are neither aribtrary nor discriminatory. *Board of Supervisors* v. *State Milk Commission,* 191 Va. 1, 8-9, 60 S.E.2d 35, 39, *appeal dismissed,* 340 U.S. 881 (1950); *Finney* v. *Hawkins,* 189 Va. 878, 886, 54 S.E.2d 872, 876 (1949); *Stickley* v. *Givens,* 176 Va. 548, 560, 11 S.E.2d 631, 637 (1940). For the reasons heretofore stated in our analysis of the Equal Protection question we hold that this ordinance does have a reasonable relation to a proper purpose and is not arbitrary or invidiously discriminatory as applied to Duke. Hence, the ordinance satisfied the requirements of the Due Process Clause.

■ Having held that the ordinance is valid in its application to Duke, we find no merit in his challenge to the sufficiency of the evidence. As Duke himself admitted, he knowingly and deliberately violated the provisions of what he believed to be an invalid ordinance and one which he was willing to test in the courts.

For the reasons assigned, we hold that there was no reversible error in Duke's conviction, and the same will be

*Affirmed.*