## CIRCUIT COURT OF FAIRFAX COUNTY

Frederick H. Goldbecker

v.

Fairfax County
Board of Supervisors

November 7, 1994

Case No. (Chancery) 136199

BY JUDGE ARTHUR B. VIEREGG, JR.

This cause came to be heard on the complainants' motion for temporary injunctive relief. Following a hearing on September 15, 1994, this Court took the matter under advisement. I am now prepared to issue my ruling.

### I. *Factual Background*

Frederick and Sheralyn Goldbecker own improved real property of less than one-half acre at 5213 Grinnell Street in Fairfax, Virginia. The Goldbeckers have maintained portions of their property in a "natural state" since 1987. Memorandum of Points and Authorities in Support of Partial Summary Judgment and in Support of Temporary Injunctive Relief, at 4.

The Virginia Code empowers counties, cities, and towns to enact ordinances requiring property owners to cut the grass and other growth on their property under certain circumstances. Va. Code §§ 15.1-11, 15.1-11.01 (1990 & Supp. 1991).

The Board of Supervisors of Fairfax County enacted Chapter 119 of the Ordinances of Fairfax County ("Grass Ordinance") in October, 1991, pursuant to the above enabling legislation and the County's general police powers delegated by the General Assembly in § 15.1-510 of the Virginia Code. This ordinance prohibits, *inter alia*, the growth in excess of twelve inches of any "grass or lawn area" of less than half an acre on developed residential property. Fairfax County Ord. § 119-3-1(a). It defines "grass or lawn area" as "an area of ground covered with grass and/or associated

growth." § 119-2-1(a). Certain types of growth are specifically excluded from the definition of grass or lawn area, including "trees, shrubs, ornamental grasses, ferns, fruits, and vegetable, herb, spice, flower and other beds." § 119-2-1(a). Rights of way across residential properties are exempted from the provisions of the ordinance. § 119-3-1(d). If an inspection of a site reveals a violation, an inspector for the County is required to serve a notice of violation on the owner directing the owner to cut the grass or lawn area. § 119-3-3. If the violation is not corrected, the Director of the Department of Environmental Management may notify the owner in writing: (1) that the Director of Public Works will cause the noncomplying area to be cut; and (2) that the owner will be charged for the attendant expense. § 119-3-4(b). The ordinance affords the owner ten days to appeal the director's decision to the County Board of Supervisors. § 119-3-6.

On May 23, 1994, Charles Bohr, an assistant supervisor of inspections for the County, inspected the Goldbeckers' property. On May 26, he issued a notice of violation to the Goldbeckers, directing them to cut the "grass or lawn area" on their property within fourteen days of receipt of the notice.

On June 21, 1994, Irving Birmingham, the Director of the Department of Environmental Management, sent the Goldbeckers notice of his intent to request the Director of the Department of Public Works to cut their "grass/lawn area." The notice stated that any appeal was required to be filed within ten days of its receipt. The Goldbeckers received the notice on June 23, 1994.

On July 4, 1994, the Goldbeckers filed an appeal. William Leidinger, the County Executive, denied the appeal in a letter dated July 27, affirming the property's noncompliance with Chapter 119. The Goldbeckers were given ten days to appeal the County Executive's decision to the Board of Supervisors.

On August 8, 1994, the Goldbeckers appealed the County Executive's decision to the Board. By letter dated August 12, 1994, the Board informed the Goldbeckers that their appeal would be considered at the September 12, 1994, board meeting and notified them of their right to submit additional written materials and to make a presentation of up to three minutes. The Goldbeckers filed an additional written statement for inclusion in the "Consideration Item" provided to the Board but did not appear at the September 12 meeting. At the meeting, the Board upheld the decision to cut the grass.

On September 15, 1994, the Goldbeckers filed their Bill of Complaint seeking declaratory judgment and injunctive relief.[1]

## II. *The Goldbeckers' Burden of Proof*

In order to obtain a temporary restraining order preventing enforcement of the Grass Ordinance, the Goldbeckers must show they have a reasonable likelihood of succeeding on the merits of the case. *See, Vardell v. Vardell*, 225 Va. 351, 302 S.E.2d 41 (1983). They also must show that they will suffer irreparable harm unless the injunction is granted and that they have no adequate remedy at law. *See, e.g., Wright v. Castles*, 232 Va. 218, 349 S.E.2d 125 (1986); *Carbaugh v. Solem*, 225 Va. 310, 302 S.E.2d 33 (1983).[2]

The Goldbeckers contend for numerous reasons that the Grass Ordinance is invalid and therefore that it may not be enforced. Their implicit argument is that they will face irreparable harm unless injunctive relief is granted because growth which has taken years to mature cannot be readily replaced. That contention is seemingly borne out by the photographs showing ample undergrowth on the Goldbeckers' property. Those photographs were introduced at the hearing on the motion for a temporary injunction. The Goldbeckers therefore make a plausible showing that slight, but nevertheless irreparable, harm will occur if their motion for temporary injunctive relief is denied.

The County makes no specific showing that it will incur injury if temporary injunctive relief is ordered by this Court. The undisputed facts demonstrate that the Goldbeckers' foliage has been increasing incrementally for more than eight years, including the three years since the Grass Ordinance was enacted. The Court therefore finds that the scales of rela-

---

[1] The Goldbeckers' Memorandum of Points and Authorities in Support of Partial Summary Judgment and in Support of Temporary Injunctive Relief, filed in chambers on September 19, 1994, deals with the issue of partial summary judgment. The defendants also deal with the issue in their response brief. Argument on this issue has not been heard or scheduled. If the parties wish the Court to decide the issue on the papers filed, I will do so.

[2] The Virginia standard for preliminary injunctions is not significantly different from the federal standard. Both draw on the same equitable principles. *Capital Tool v. Maschinenfabrik Herkules*, 837 F.2d 171 (4th Cir. 1988). These principles require balancing the factors to be considered in determining whether injunctive relief is appropriate. Federal case law suggests that when there is a clear showing of a reasonable likelihood of success, a correspondingly slighter showing of irreparable harm is considered sufficient. *See, e.g., Dan River, Inc. v. Icahn*, 701 F.2d 278 (4th Cir. 1983).

tive harm weigh slightly in the Goldbeckers' favor. Under these circumstances, the decision of whether or not to grant the Goldbeckers' prayer for temporary injunctive relief primarily depends upon whether they have shown that there is a reasonable likelihood that the Grass Ordinance is invalid.

### III. *The Grass Ordinance*

In § 15.1-11.01, the Virginia General Assembly specifically authorized Fairfax County and certain other counties to enact ordinances:

> requir[ing] that the owner of occupied residential real property therein cut the grass or lawn area of less than one-half acre on such property or any part thereof at such time or times as the governing body shall prescribe when growth or such grass or lawn area exceeds twelve inches in height; or may whenever the governing body deems it necessary, after reasonable notice, have such grass or lawn area cut by its agents or employees, in which event, the cost and expenses thereof shall be chargeable to and paid by the property owner of such property and may be collected by the county as taxes and levies are collected . . . .

Based upon both § 15.1-11.01 and its general police powers under § 15.1-510, on October 1, 1991, the Board of Supervisors of Fairfax County passed the Grass Ordinance.[3]

It provides, in part, that:

> [i]t shall be unlawful for any owner of any occupied residential lot or parcel which is less than one-half acre (21,780 square feet) or any vacant developed residential lot or parcel which is less than one-half acre (21,780 square feet) to permit the growth of any grass or lawn area to reach more than twelve (12) inches in height/length.

Section 119-3-1(a). The ordinance is enforced as described in the first section of this opinion.

---

[3] Virginia Code § 15.1-11 authorizes counties, cities, and towns to enact ordinances to cut grass on vacant property. Furthermore, a portion of the Grass Ordinance pertains to such properties. However, Goldbecker uses his property as his residence. Section 15.1-11 does not constitute authority for the Board's enactment of an ordinance to cut grass on occupied property. It therefore does not figure in the decision before the Court.

## IV. *The Likelihood that the Grass Ordinance Is Invalid*

One of the Goldbeckers' arguments that the Grass Ordinance is invalid is that it creates discriminatory classifications. In other words, landowners of residential properties of one-half acre are subject to the Grass Ordinance's twelve-inch grass restrictions, while landowners of similarly situated properties even marginally larger than a half acre are not subject to those restrictions.

The Board argues that the provisions of the Grass Ordinance are specifically authorized by the General Assembly's enactment of § 15.1-11.01. However, while that statute authorizes the enactment of ordinances regulating the length of grass on residential property, it does not authorize the limitation of such ordinances to lots of one-half acre or less. Accordingly, since § 15.1-11.01 did not authorize such a classification, the Board's authority to create such a classification arises, if at all, from its general police powers.[4]

The validity of the Grass Ordinance therefore depends on its reasonableness; in other words, whether the classification created has a rational relationship to the Ordinance's purposes and is not arbitrary. *Norfolk v. Tiny House*, 222 Va. 414, 419, 281 S.E.2d 836 (1981); *Kisley v. Falls Church*, 212 Va. 693, 697, 187 S.E.2d 168, *app. dis'd*, 409 U.S. 907 (1972). The only basis advanced by the Board for the enactment of the Grass Ordinance is the protection of property values. Memorandum in Opposition to Complainant's Motion for Temporary Injunctive Relief, at 8. Furthermore, while it refers this Court to authority that such considerations may constitute a basis for the enactment of land use laws, it contends that the Grass Ordinance is not such a statute. Opposition, at 11. The Board has also failed to present any reported decision in which a local governmental entity has been permitted to regulate the length of grass or any analogous, non-land use activity because the unregulated activity would undermine property values.[5]

---

[4] Had § 15.1-11.01 specifically authorized such classifications, the Grass Ordinance would have been presumptively valid but for arguments that it was inconsistent with other federal or state constitutions, statutes, or treaties. *See* Eugene McQuillen, *The Law of Municipal Corporation* § 18.02 (1979) [hereinafter "McQuillen"]; *National Linen Service v. Norfolk*, 196 Va. 277, 280, 83 S.E.2d 401 (1954).

[5] The cases cited by the County do not specifically support the proposition that counties may use their police power to protect property values through enacting restrictive regulations. *Richmond v. Board* states that conserving the value of buildings and encouraging

Furthermore, even if this Court were to adopt the Board's argument that its power to regulate grass length falls within its police power so as to protect property values, the Board must nevertheless demonstrate that the application of the classification created by the Grass Ordinance uniformly operates to achieve the Board's police power purposes. *See* McQuillen, § 18.09. It must show that the classification does not result in similarly situated persons receiving differential treatment. The standard in Virginia is that "wide discretion may be exercised by a governing body in establishing a non-suspect classification." *Duke v. County of Pulaski*, 219 Va. 428, 433, 247 S.E.2d 824 (1978). The classification will be upheld if the governmental objective is legitimate and the classification bears a reasonable relation to it. *Id.* Despite the Board's wide discretion, it is difficult to discern — and the Board does not explain — why it may regulate the length of grass for the owner of a lot of less than a half acre but not one of slightly more than a half acre, although such two parcels might be situated side by side and alike in all other respects. Such a classification does not appear to be calculated to protect all property values and therefore appears to be unreasonable.[6]

For the foregoing reasons, this Court concludes that the Goldbeckers have sustained their initial burden of demonstrating that there is a likelihood that, at trial, they will prevail upon the merits of their challenge to the validity of the Grass Ordinance. The Court therefore enjoins the County from enforcement of the Grass Ordinance pending the outcome of a trial on the merits. The Court requires the Goldbeckers to post an injunction bond in the amount of $400.00, pursuant to § 8.01-631 of the Virginia Code. This injunction bond will expire upon the resolution of the merits of the Goldbeckers' Bill of Complaint or at 2:00 p.m. on Friday, March 3, 1995, whichever is sooner.

---

appropriate use of land are proper zoning purposes. 199 Va. 679, 686, 101 S.E.2d 641 (1958). *West Bros. Brick Co. v. Alexandria* deals with promoting public convenience or general prosperity through zoning. 169 Va. 271, 192 S.E. 881 (1937).

[6] The Court recognizes that the Goldbeckers have challenged the validity of the Grass Ordinance on additional grounds. In view of the Court's conclusion that it is likely that the Ordinance is invalid on account of the unreasonable classification invoked by it, it is not necessary to address those grounds at this time.