Present:  All the Justices

BOARD OF DIRECTORS OF THE
TUCKAHOE ASSOCIATION, INC.

v.  Record No. 980343   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        January 8, 1999
CITY OF RICHMOND


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Theodore J. Markow, Judge


     In this appeal, we consider the trial court's rulings that:
1) a city ordinance imposing utility taxes is unconstitutional
on equal protection grounds, and 2) a condominium unit owners'
association, which purchased utility services at commercial
rates, should be taxed as a residential purchaser under the
ordinance.

     The Tuckahoe Association, Inc. (the Association), a non-
stock corporation organized under the Virginia Condominium Act,
Code §§ 55-79.39 – 79.103, is comprised of the individual unit
owners of the Tuckahoe Condominium.  The condominium property
consists of one building containing 68 residential units and a
parking lot for the use of unit owners and their guests.

     The Association purchases at commercial rates electricity
from the Virginia Power Company and natural gas from the
Richmond Department of Public Utilities.  The amount of
electricity purchased is registered on one master meter and the
amount of gas purchased is registered on two master meters.  The

Association purchases these utility services with funds received from the individual unit owners' annual assessments. By purchasing these services at commercial, rather than residential, rates, the Association pays a significantly lower amount for such services.

Pursuant to § 2.02 of its City Charter, the City of Richmond enacted an ordinance imposing a utility tax on telephone, electric, and gas service, which is collected by the seller of each service. Richmond, Va., Code § 27-152.1. The ordinance establishes different tax rates for purchasers of commercial and residential service. Id. The terms "residential" and "commercial" are not defined in the ordinance. Since the Association purchased electric and gas services from the utility providers at commercial rates, the City imposed its commercial tax rate on those purchases.

The Association filed a motion for judgment under Code § 58.1-3984 to correct the City's allegedly erroneous assessment of utility taxes. The Association alleged that it was a "residential user" of the utility services and was entitled to a refund of the amount of utility taxes paid "in excess of the residential [tax] rate [it] should properly be charged." The Association further alleged that the City's "classification of [the Association] for purposes of the subject utility tax, not having a reasonable basis for a commercial classification, is

2

wholly arbitrary" and violates the equal protection clauses of the United States and Virginia Constitutions.

The City responded that its utility tax ordinance expressly classifies taxpayers based on the type of utility service purchased, rather than on the nature of the ultimate consumer of the service. Since the Association admitted that it purchases commercial gas and electric service and is billed for those services at the more advantageous commercial rates, the City maintained that the Association was not entitled to be taxed for those services under a residential classification.

After hearing argument on the parties' motions for summary judgment, the trial court ruled that the residential and commercial classifications contained in the ordinance are "not based on real differences" and, thus, are arbitrary and unreasonable. The court held that the ordinance unconstitutionally delegates to the utility companies the right to determine, based on their own internal regulations, who qualifies for the more favorable residential service taxation rate. The court concluded that "[a]s [the Association] has successfully rebutted the reasonableness of the [City's] commercial/residential classification, the court invalidates this utility taxation scheme on equal protection grounds."

In an order denying the City's motion to reconsider, the trial court stated that "the Richmond utility tax in this case

3

is 'fatally indefinite' — it is literally devoid of any means to determine how <u>any</u> utility service customer should be categorized by the service provider for tax purposes. . . . [E]ach and every customer classification is based upon utility company guesswork and internal guidelines foreign to the ordinance itself."

The Association then filed an amended motion for judgment seeking, in the alternative, a full refund of all utility taxes paid from January 1993 through September 1997, or a refund of utility taxes paid in excess of the residential rate during that time period. The City filed a counterclaim, alleging that if it had applied the residential tax rate to the Association's utility purchases, the City would have assessed the utility tax against each individual unit. The City alleged that, under this methodology, the total amount of utility taxes owed by the Association was greater than the amount of taxes the Association actually paid at the commercial rate. The City requested judgment pursuant to Code § 58.1-3903 in the amount of the alleged underpayment.

At a hearing to determine damages, the City presented the testimony of Andrew Roundtree, the City official responsible for assessing the City's utility tax. Roundtree testified that if the City were required to apply its residential tax rate to the utility services supplied to the Tuckahoe Condominium, the City would treat each unit owner as a residential customer. Since

4

the units do not have individual meters, Roundtree explained that he would divide the Association's total electric and gas service charges by the number of individual units in order to determine an average charge per unit. He would then apply the tax rate to this average charge and multiply that amount by 68 to determine the total amount due from the Association. Roundtree testified that, under this method, the Association would owe $190.61 more for the time period at issue than the tax that was actually assessed at the commercial tax rate.

The trial court entered a final order holding that the Association "should be classified as 'residential' for purposes of the City's utility tax scheme." In reaching this conclusion, the court relied on § 27-151 of the City Code, which defines "purchaser" as "every person who purchases a utility service." The court stated that "each household/end-user at the Tuckahoe building purchases these services on an individual basis through its pro rata share of total condominium consumption." The court found that the Association would have paid an additional $190.61 in utility taxes if the 68 individual units had been taxed at the City's residential rate. On this basis, the court awarded judgment on the counterclaim in favor of the City in that amount. This appeal followed.

In reviewing the ordinance, we address the City's assignments of cross-error because they determine the outcome of

5

this appeal. The City first contends that the trial court erred in holding that the ordinance is unconstitutional, because the tax classifications are reasonable, and do not effectively delegate the authority to the utility providers to determine the rate at which purchasers of utility services will be taxed.

In response, the Association contends that the ordinance's classifications are arbitrary, and that the ordinance improperly delegates taxing authority to the utility providers by allowing the providers to determine which purchasers qualify for the different categories of services on which the tax is based. We disagree with the Association.

The trial court did not specify in its ruling whether it found the ordinance facially invalid or merely invalid as applied to the Association. Because the court's ruling incorporates principles derived from each of these concepts, we review the constitutionality of the ordinance in both contexts.

When scrutinizing a tax classification contained in an ordinance on equal protection grounds, we begin with the basic principle that a government has broad powers of classification for taxation purposes. See Cox Cable Hampton Roads, Inc. v. City of Norfolk, 247 Va. 64, 66, 439 S.E.2d 366, 367 (1994). The constitutional guarantee of equal protection does not mandate that taxpayers be given identical treatment under a

taxation statute.  Id., 439 S.E.2d at 367-68.  Instead, we have said that this guarantee

> "'only requires that the classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments not be so disparate, relative to the difference in classification, as to be wholly arbitrary.'  Walters v. City of St. Louis, Mo., 347 U.S. 231, 237 (1954).  If the classification is reasonable and not arbitrary, uniformity and equality are not required."

Id. at 66-67, 439 S.E.2d at 368, (quoting City of Portsmouth v. Citizens Trust Co., 216 Va. 695, 698, 222 S.E.2d 532, 534 (1976)); see also City of Richmond v. Fary, 210 Va. 338, 343-44, 171 S.E.2d 257, 261 (1969).

Like the ordinance in which they are found, the classifications contained in an ordinance are presumptively valid.  Sheek v. City of Newport News, 214 Va. 288, 290, 199 S.E.2d 519, 521 (1973); Kisley v. City of Falls Church, 212 Va. 693, 697, 187 S.E.2d 168, 171 (1972).  This presumption of validity governs unless it is rebutted by unreasonableness apparent on the face of the ordinance or by extrinsic evidence clearly establishing unreasonableness.  Sheek, 214 Va. at 290, 199 S.E.2d at 521; Kisley, 212 Va. at 697, 187 S.E.2d at 171; National Linen Service Corp. v. Norfolk, 196 Va. 277, 279, 83 S.E.2d 401, 403 (1954).  Thus, if a classification has some reasonable basis and reasonably relates to the legislative

7

objective of the ordinance, the local government may treat different classes in different ways.  Duke v. Pulaski County, 219 Va. 428, 433, 247 S.E.2d 824, 827 (1978).

We conclude that the present ordinance is facially valid. Since the ordinance's classifications are based on the type of utility service purchased, they contain distinctions resting on real and not feigned differences.  As evidenced by the record, these distinctions are related to the apparent purpose of the classifications, which is to allocate fairly the tax burden imposed on utility service purchasers.  The Association admitted in the trial court that by purchasing commercial utility services, it pays significantly less for its electricity and natural gas than it would if it purchased residential utility services in the same quantities.  The utility tax classifications contained in the City's ordinance impose a greater tax rate on such volume purchasers who receive the benefit of a lower purchase price from the utility provider. Conversely, purchasers of residential service who pay a higher unit cost than commercial purchasers for their utility services are given the benefit of a lower tax rate.  We hold that such distinctions are not unreasonable or so disparate in their treatment as to be arbitrary, and that the trial court erred in concluding otherwise.

8

We also disagree with the trial court's ruling that the ordinance's classifications effectively delegate governmental authority, allowing the utility providers to "pick and choose" which purchasers will be deemed eligible for the lower residential tax rate.  Under the ordinance, the utility providers' role is limited to collecting the utility tax.  The providers do not determine the particular rate of tax each purchaser must pay.

When any individual or entity has purchased commercial service from the provider, the provider is directed to collect taxes based on the fixed commercial rate set by the ordinance.  Likewise, the utility provider is required to collect taxes due from any purchaser of residential service at the fixed residential rate contained in the ordinance.  Although the trial court reasoned that it is within the utility provider's sole discretion to determine what type of service each customer receives, we find no evidence in the record supporting such a conclusion.  The Association failed to prove its contention that the utility providers control the ultimate tax imposed on a customer by internal company rules regulating the availability of commercial and residential services to a given purchaser.

Since there is no language in the ordinance or evidence in the record to show that the utility providers exercise discretionary authority under the ordinance, we find no merit in

the Association's contention that the present case is controlled by Chapel v. Commonwealth, 197 Va. 406, 89 S.E.2d 337 (1955). There, we held that a former statute known as the Dry Cleaners Act was invalid, because it delegated to the State Dry Cleaners Board the power to promulgate rules and regulations controlling dry cleaning businesses, without fixing any standard to guide and control the Board's exercise of its discretion. Id. at 413-14, 89 S.E.2d at 342. Unlike the statute at issue in Chapel, the present ordinance does not delegate discretionary authority to the utility providers. Thus, we hold that the trial court erred in ruling that the ordinance is invalid on this basis.

We also note that the record fails to support a conclusion that the ordinance is unconstitutional as applied to the Association. The Association did not present evidence that it was treated differently under the ordinance from any other residential condominium unit owners' association with master metering devices. The Association also failed to demonstrate that the ordinance's application of the commercial utility tax classification to its purchases of commercial utility service was arbitrary or unreasonable.

We next consider the City's assignment of cross-error that the trial court erred in ruling that the Association was entitled to be classified as a purchaser of residential utility services. The City argues that, under the plain language of the

ordinance, the Association's purchase of commercial utility services required that it be taxed at the commercial rate.

In response, the Association contends that the trial court properly ruled that the Association is entitled to be classified as a residential purchaser, because the Tuckahoe complex is used solely as a place of residence. The Association also argues that since the ordinance classifies taxpayers based on the type of service purchased, rather than the commercial or residential nature of the purchaser of those services, the ordinance conflicts with Code § 58.1-3814. We disagree with the Association.

As stated above, the trial court based its ruling on the reasoning that each "household/end-user at the Tuckahoe building purchases these services on an individual basis through its pro rata share of total condominium consumption." This conclusion, however, is directly refuted by the evidence, which showed that the Association, a non-profit corporation, actually contracted and paid for the utility services recorded on its master meters. The fact that the individual unit owners' assessments are the source of funds for payment of the corporation's obligations does not alter the nature of those obligations or make the unit owners purchasers under the ordinance.

The authority of a city to impose a tax by ordinance depends upon a positive grant of authority by the General

Assembly.  Hampton Nissan Ltd. Partnership v. City of Hampton, 251 Va. 100, 104, 466 S.E.2d 95, 97 (1996); Williams v. City of Richmond, 177 Va. 477, 484, 14 S.E.2d 287, 289 (1941).  If the city's charter grants a particular power to the city, an ordinance passed pursuant to that grant has the same status as an act of the General Assembly.  Id.; Gordon Bros. v. City of Newport News, 102 Va. 649, 650-51, 47 S.E. 828, 829 (1904).

Here, § 2.02 of the City's charter, enacted by the General Assembly, authorizes the City "to levy on and collect taxes from purchasers of any public utility service used within the city, which taxes may be added to and collected with the bills rendered purchasers of such service."  1948 Va. Acts of Assembly, ch. 116.  This grant of power plainly provides that the purchasers, rather than the ultimate consumers or "end-users," of such utility services are the proper objects of taxation.  The City's ordinance reflects this authority granted by the charter, by imposing utility taxes only on the actual purchasers of utility services who are rendered a bill for those services.

We also find no merit in the Association's contention that it is a "residential customer" within the meaning of Code § 58.1-3814 and, thus, that the ordinance conflicts with the statute.  Code § 58.1-3814 provides, in relevant part:

12

A. Any county, city or town may impose a tax on the consumers of the utility service or services provided by any water or heat, light and power company. . . which tax shall not be imposed at a rate in excess of twenty percent of the monthly amount charged to consumers of the utility service and shall not be applicable to any amount so charged in excess of fifteen dollars per month for residential customers. Any city, town or county that on July 1, 1972, imposed a utility consumer tax in excess of limits specified herein may continue to impose such a tax in excess of such limits, but no more.

The Association contends that the purpose of the statute would be defeated if it is denied the benefit of the residential utility tax "cap" and charged a commercial tax, merely because it took advantage of the best available utility rates offered by the utility providers. We disagree.

In authorizing local governments to levy a utility tax on "consumers" of utility services, Code § 58.1-3814 places a limit on the amount of tax that can be imposed on a "residential customer." As a commercial purchaser of utility services, the Association is a "consumer" of those services, notwithstanding the fact that the unit owners are the "end-users" of most of the services provided. However, the Association is not a "residential customer" of the utility providers, within the meaning of the statute, because it does not purchase residential service from those providers. The unit owners also are not "residential customers" of the utilities, because they do not individually contract and pay for their electric and gas

13

service.  Therefore, neither the Association nor the individual unit owners are entitled to the benefit of the "cap" provided to "residential customers" under the statute.

Based on the above holding, we conclude that the trial court erred in ruling that the Association was entitled to be "classified as residential for purposes of the City's utility tax scheme."  We also conclude that the trial court erred in ruling that the individual unit owners should be treated as purchasers of residential utility services, and that the Association's utility tax should be computed on this basis.

For these reasons, we will reverse the trial court's award of summary judgment in favor of the Association on its motion for judgment, reverse the court's judgment in favor of the City on its counterclaim, and enter final judgment for the City on the motion for judgment.

<u>Reversed and final judgment.</u>