THE BOARD OF SUPERVISORS OF ELIZABETH CITY COUNTY, VIRGINIA, ETC. v. STATE MILK COMMISSION.

June 19, 1950.

Record No. 3650.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*J. Wilton Hope, Jr., Victor P. Wilson* and *F. Lee Ford,* for the appellants.

*J. Lindsay Almond, Jr., Attorney General,* and *Henry T. Wickham, Assistant Attorney General,* for the appellee.

*Christian, Barton, Parker & Boyd,* amicus curiae.

HUDGINS, C.J., delivered the opinion of the court.

The Board of Supervisors of Elizabeth City County, the Parent Teachers Association, and other civic groups, perfected an appeal to the Circuit Court of the city of Richmond from certain orders entered by the State Milk Commission fixing the minimum prices of milk sold in the Newport News milk-marketing area. From an adverse decree complainants obtained this appeal.

The orders were attacked on various grounds in the court below, all of which have been abandoned except the question of the constitutionality of Chapter 357 of the Acts of 1934, creating the State Milk Commission and defining its duties.

The question, whether the Act contravenes section 1 of Article 1, of the Constitution of Virginia, and the Fifth and Fourteenth Amendments of the Constitution of the United States, has been so thoroughly discussed and the Act upheld by this Court in *Reynolds* v. *Milk Comm.,* 163 Va. 957, 179 S. E. 507, by the United States Circuit Court of Appeals, for the Fourth Circuit, in *Highland Farms Dairy* v. *Agnew,* 16 F. Supp. 575, and by the Supreme Court of the United States in the same case, 300 U. S. p. 608, 57 S. Ct. 549, 81 L. ed. 835, that further discussion is unnecessary.

However, appellants contend that the following points were not considered by the courts in the foregoing cases: (1) the statute unlawfully delegates to private individuals the power of legislation; (2) the composition of the State Milk Commission in itself is a denial of the right of a fair and unprejudiced hearing, and, therefore, a denial of due process of law; (3) there is no existing emergency justifying "the unlawful and unwarranted use" of police power.

(1) The State Milk Commission is an official statutory body, created by section 2 of the Act. Members of the Commission are appointed by the Governor and subject to removal at his pleasure. Hence the official acts of the Commission do not come within the influence of that class of cases of which *Eubank* v. *Richmond,* 226 U. S. 137,

33 S. Ct. 76, 57 L. ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192, is typical.

Mr. Justice Cardozo in *Highland Farms Dairy* v. *Agnew*, 300 U. S. 608, 57 S. Ct. 549, 81 L. ed. 835, in pointing out the distinction between the *Eubank Case* and the case under consideration, said: "The argument is made that the effect of that provision is to vest in unofficial agencies, capriciously selected, a power of repeal to be exercised at pleasure. The case of *Eubank* v. *Richmond*, 226 U. S. 137, 33 S. Ct. 76, 57 L. ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192, is cited for the proposition that this cannot be done consistently with the Fourteenth Amendment of the Federal Constitution. Delegation to official agencies is one thing, there being nothing in the concept of due process to require that a particular agency shall have a monopoly of power; delegation to private interests or unofficial groups with arbitrary capacity to make their will prevail as law may be something very different. Cf., however, *Cusack Co.* v. *Chicago*, 242 U. S. 526, 531, 37 S. Ct. 190, 61 L. ed. 472, Ann. Cas. 1917C, 594. Such is the appellants' argument when its implications are developed."

Appellants, in support of their position, cite *State* v. *Crawford*, 104 Kan. 141, 177 P. 360, 2 A. L. R. 880. The facts in that case are clearly distinguishable from the facts in the case under consideration. There the legislature enacted a statute to the effect that "all electrical wiring shall be in accordance with the national electrical code." This code was promulgated by a body of private individuals, a voluntary, unofficial organization, which meets occasionally in different sections of the United States. The court correctly held that the Act in question was an attempt to delegate the legislative power of the State to a private organization and was void. This decision is controlled by the principles enunciated in *Eubank* v. *Richmond, supra.* The case is obviously not in point and further discussion of it is useless.

The delegation of legislative power to the Commission

is not a delegation to private individuals, but to an official body created by law.

(2) Appellants' second contention is based on the fact that the Act provides that the Governor shall select as members of the Commission three persons, one of whom must be engaged in the production of milk, one in the distribution thereof, and the third must have no connection, financially or otherwise, with the production and distribution of milk. Appellants sum up their argument on this point in these words: "The delegation of authority to a board in which the majority are interested in a financial way is legislation that is unnatural, unreasonable, arbitrary, illegal, and should be declared unconstitutional."

One case—*Milk Marketing Board* v. *Johnson*, 295 Mich. 644, 295 N. W. 346—is cited to support this contention. This case was decided by a divided court. The views expressed by the minority are more persuasive and are in accord with the principles supported by many authorities. In this dissent it is said: "Any interest of the members of the board in the result of the rules, regulations, and orders promulgated by them does not render the act unconstitutional. In matters affecting legislative or administrative acts, the law only requires that the officers engaged in such administration act from disinterested motives. Where the State regulates businesses or professions, the administrative bodies generally are composed of members of the businesses or professions to be so regulated, in keeping with a legislative policy of entrusting such regulation to those best equipped, through knowledge and experience, for the task. Practically all of the States in which the production of milk is a major industry have enacted statutes similar to that of Michigan, providing that the members of the board be appointed from those engaged as producers and distributors and from consumers. In *Highland Farms Dairy* v. *Agnew*, 300 U. S. 608 (57 S. Ct. 549, 81 L. ed. 835), a statute of Virginia, creating a milk commission, was held to be valid, and the power of regulation was held to be lawful although

it was provided by the act that the commission consist of three members, two of whom were required to be producers of milk.[1] Apparently no question was raised with regard to the membership of the commission."

The State Milk Commission was created for the purpose of carrying out the legislative policy stated in the Act. The legislature has power to ascertain and declare, subject to constitutional regulations, what activities are inconsistent with the performance of public duties. The Act expressly declares that each of the three groups interested in the price of milk, the producer, the distributor, and the consumer, shall be represented on the Commission for the obvious purpose of having a well rounded commission whose knowledge of the problems of and experience in the milk industry will enable them to act fairly and intelligently on the questions presented. See *Franklin* v. *State*, 232 Ala. 637, 169 So. 295; *State* v. *Newark Milk Co.*, 118 N. J. Eq. 504, 179 A. 116; *Rohrer* v. *Milk Control Board*, 322 Pa. 257, 186 A. 336.

In *Fleisher* v. *Duncan*, 195 Ga. 309, 24 S. E. (2d) 15, it was said: " * * * The averment attacking the constitutionality of the act, that because the seven-member board was composed of two producers, two store licensees, but only one consumer, does not require the conclusion as pleaded that such a composition of the Board made it 'not impartial,' and 'as a result of the personnel of the Board,' the plaintiffs were 'compelled to pay a higher price for milk than they would otherwise have to pay.' "

To hold the Act unconstitutional on the ground that two members of the Commission are interested in the production and distribution of milk would be to apply the same qualifications to members of an administrative agency created by the legislature as is required of judges in trying cases. The proper performance of these duties requires that the

---

[1] The composition of the Virginia Commission was changed by the Act of 1940, p. 415, which provides that the Commission shall be composed of three members, one a producer, one a distributor of milk, and the third a consumer.

officials shall act in good faith. Any person aggrieved by an order of the Commission refusing to issue, or to re-issue a license, or revoke or suspend a license, is given a right of appeal direct to this Court. Any person aggrieved by any other order of the Commission is given a right of appeal to the Circuit Court of the city of Richmond. This right of appeal was exercised in *Lucerne Cream, etc., Co.* v. *Milk Comm.*, 182 Va. 490, 29 S. E. (2d) 397, and *Rountree* v. *State Milk Comm.*, 184 Va. 777, 36 S. E. (2d) 613. In each case the orders of the Commission were held to be erroneous and were reversed.

The provisions of the Act fully protect the rights of any party affected by the composition and orders of the Commission. The requirement that members of the State Milk Commission shall be selected from the three groups named, is similar to the requirements of the statutes in eight other states, namely: Alabama, California, Florida, Georgia, Maine, Montana, Rhode Island, and Texas. Price fixing is within the legislative field and it is a general legislative policy to submit such technical problems to an experienced and informed tribunal.

(3) The next assignment of error is based on the contention that the emergency stated in the preamble to the Act was the ground on which this Court in the *Reynolds Case* upheld its constitutionality. This is a misconception of the statement in the preamble to the Act, as well as the grounds upon which its constitutionality was upheld. Mr. Justice Gregory, speaking for the court in that case, said: "* * * Can it be argued that they do not affect private property, but that a regulation fixing prices does? Can it be said that one has the natural right to engage in the milk industry when he is required to secure a permit which may be granted or withheld? How can it be said that the industry is not affected with a public interest when it is already circumvented by so many regulations made for the benefit of the public? Those regulations constitute restraints upon the exercise of personal rights for they

prohibit one from dealing with his own property freely and as he chooses. Yet no one has asserted that they were void because in violation of some constitutional provision. In Virginia, they have never been challenged so far as we are advised.

"There can be no controlling difference between the fire insurance business and the milk industry in so far as regulation and price fixing by the state are concerned. Regulations in both instances limit the control the owners have over their property. If the fire insurance business is affected with a public interest, then surely the milk industry is so affected."

Mr. Justice Roberts, speaking for the court, in *Nebbia v. New York*, 291 U. S. 502, 54 S. Ct. 505, 78 L. ed. 940, 89 A. L. R. 1469, did not base his decision upon an emergency, but on the ground that the milk industry was an industry affected with a public interest and, therefore subject to legislative control and regulation for the public good. Speaking to the point, he said: "It is clear that there is no closed class or category of businesses affected with a public interest, and the function of courts in the application of the Fifth and Fourteenth Amendments is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory. * * * The phrase 'affected with a public interest' can, in the nature of things, mean no more than that an industry, for adequate reason, is subject to control for the public good. * * *

"So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislative arm, to override it. If the laws passed are seen to have a reasonable relation to a

proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court *functus officio*."

For other cases holding that similar acts are constitutional, although not based upon a temporary economic emergency, see *Highland Farms Dairy* v. *Agnew, supra; Taylor* v. *State,* 237 Ala. 178, 186 So. 463; *Jersey Maid Milk Products* v. *Brock,* 13 Cal. (2d) 620, 91 P. (2d) 577; *Albert* v. *Milk Control Board,* 210 Ind. 283, 200 N. E. 688; *State* v. *Farmers Union Cooperative Creamery,* 160 Or. 205, 84 P. (2d) 471; *Johnson* v. *Figy,* 314 Mich. 548, 22 N. W. (2d) 893; *Waldron & Sons Co.* v. *Milk Control Board,* 131 N. J. L. 267, 35 A. (2d) 27.

Appellants argue that the above cited authorities are not controlling because the Virginia act was based on an emergency. As already pointed out, this Court did not base its decision on that ground. A careful reading of the preamble of the Act itself does not justify the construction that appellants attempt to put upon it. The preamble does not state that the Act was passed because of the existence of an economic emergency in 1934. It states that the economic emergency "is in part the result of the disparity between the prices of milk and cream and other commodities, which disparity has diminished the power of milk producers to purchase industrial products, has broken down the orderly production and marketing of milk and cream, and has seriously impaired the agricultural assets supporting the credit structure of the Commonwealth." It was also stated that unfair trade practices had grown up, impaired the dairy industry and constituted a menace to the health and welfare of the Commonwealth. The preamble concludes: "Whereas, in order to protect the well-being of the people of the Commonwealth of Virginia, and to promote the public welfare, public health and public peace, the production, transportation, processing, storage, distribution, and sale of milk and cream in the Common-

wealth of Virginia, is hereby declared a business affecting the public peace, health and welfare, which should be supervised and controlled in the exercise of the police power of the Commonwealth * * *."

In the absence of evidence to the contrary, this Court will take the statements of the preamble to be true, and will not substitute its judgment for that of the legislature.

Since 1934 there have been eight regular, and three special, sessions of the General Assembly. At any one of the eleven sessions the Act could have been terminated by a simple resolution. Likewise, any one of four governors could have terminated the Act by proclamation. Parts of the Act were amended and re-enacted in 1940 by the General Assembly (Acts 1940, pp. 415, 431). At the 1950 session of the General Assembly several bills were introduced, designed to either terminate or render the Act ineffective. Each of these bills was defeated in committee.

The Commission on Code Recodification codified the entire Act (Chap. 17 of the Code of 1950). So codified, the General Assembly of 1948 re-enacted Chap. 357 of the Acts of 1934 (together with the 1940 amendments), creating the Milk Commission and defining its duties. When section 17 of the original act was re-adopted as section 3-383 of the Code of 1950, the words "of public emergency" were omitted. The present statute reads: "The period during which this article shall be effective shall be until such date as the General Assembly may, by joint resolution, designate to be the termination thereof, or if the General Assembly be not in session the date so designated by a proclamation of the Governor."

It follows that the question of "an existing emergency" is not now, if it ever was, an element to be considered in passing upon the constitutionality of the Act.

In justice to the member of the Commission who resides in the Newport News area, it should be said that when the Commission was considering the orders to be entered fixing minimum prices for milk, he disqualified himself on

the ground that he was a distributor of fluid milk in that particular area, and, therefore, directly interested in the questions then being considered by the Commission. The orders were entered by two members of the Commission, one a consumer, and the other a producer.

The earnestness of the attorneys for appellants in their argument induced the Court to discuss briefly the errors assigned. The case could, and perhaps should, have been decided on the principle enunciated by Judge Burks, in *Portsmouth* v. *Weiss,* 145 Va. 94, 103, 133 S. E. 781, wherein he said: "In the brief of counsel for the defendant in error it is said: 'We are not unmindful of the case of *O'Neil* v. *Richmond,* 141 Va. 168, 126 S. E. 56, where the constitutionality of a similar statute was recently upheld by this court; but that case is not in point here, for the statute was attacked upon entirely different grounds, and nothing in the opinion is germane to the point raised here.'

"It is a grave mistake to suppose the case is not in point. It is wholly immaterial that the attack upon the statute in that case was 'upon entirely different grounds.' Whenever a statute is enforced by a judgment or decree of a court, it is a judicial determination that the statute is a valid enactment and is free from *all constitutional objections.*"

The decree of the trial court is

*Affirmed.*