JUSTICE McCULLOUGH, concurring.
 

 I concur in the majority opinion. I write separately, however, to address a premise that underpins the appellant's argument, which is that the Due Process Clause of Article I § 11 of the Constitution of Virginia includes a "substantive" component. Although our cases have
 
 assumed
 
 the existence of a substantive component to our Due Process Clause,
 
 see, e.g.
 
 ,
 
 Etheridge v. Medical Center Hospitals
 
 ,
 
 237 Va. 87
 
 , 97,
 
 376 S.E.2d 525
 
 , 530 (1989), we have never undertaken the textual or historical inquiry necessary to determine whether, as a matter of original public meaning, our Due Process Clause contains a substantive component. To the extent we have discussed substantive due process in any depth, it has always been in connection with case law from the United States Supreme Court and the Constitution of the United States.
 
 See
 

 Walton v. Commonwealth
 
 ,
 
 255 Va. 422
 
 , 427-28,
 
 497 S.E.2d 869
 
 , 872-73 (1998) ;
 
 Etheridge
 
 ,
 
 237 Va. at 97-98
 
 ,
 
 376 S.E.2d at
 
 529-30 ;
 
 Duke v. County of Pulaski
 
 ,
 
 219 Va. 428
 
 , 437-38,
 
 247 S.E.2d 824
 
 , 829 (1978) ;
 
 Board of Supervisors v. State Milk Comm'n
 
 ,
 
 191 Va. 1
 
 , 8-9,
 
 60 S.E.2d 35
 
 , 39 (1950) ;
 
 Finney v. Hawkins
 
 ,
 
 189 Va. 878
 
 , 886,
 
 54 S.E.2d 872
 
 , 876 (1949) ;
 
 Stickley v. Givens
 
 ,
 
 176 Va. 548
 
 , 560,
 
 11 S.E.2d 631
 
 , 637 (1940).
 

 First, as a textual matter, our Due Process Clause provides no hint that it contains a substantive component. The Due Process Clause has been part of our Bill of Rights since 1902, and it states in relevant part "[t]hat no person shall be deprived of his life, liberty, or property without due process of law." Va. Const. art. I, § 11. Its wording tracks the language of the Fifth Amendment and the Fourteenth Amendment. Properly understood, these clauses have a straightforward meaning: that if the state wishes to deprive a person of his life, liberty, or property, it must provide "due process of law,"
 
 i.e.
 
 , procedural due process, which ordinarily includes, among other things, notice, and the opportunity to be heard before an impartial tribunal. The Due Process Clause cannot fairly be read to include a substantive component that restrains arbitrary lawmaking. From a textual perspective, "substantive"
 

 due process "is an oxymoron." Steven G. Calabresi, Substantive Due Process after
 
 Gonzales v. Carhart
 
 ,
 
 106 Mich. L. Rev. 1517
 
 , 1531 (2008).
 
 See also
 
 John Hart Ely, Democracy and Distrust: A Theory of Judicial Review 186 (1980) ( "[S]ubstantive due process is a contradiction in terms.").
 

 Second, nothing in the extensive constitutional debates that resulted in the adoption of the Constitution of Virginia of 1902 suggests that its framers intended to include a substantive component to this clause. One would expect to find a vigorous debate on the point, had the drafters of this provision intended such a radical and counter-textual reading of the Due Process Clause. That debate is nowhere to be found. More recently, in 1969, the Report of the Commission on Constitutional Revision recommended the addition of the words "life" and "liberty" to the protections for which due process should extend. There is no mention of "substantive" due process. The Constitution of Virginia, Report of the Commission on Constitutional Revision 95-96 (1969). It is therefore unlikely that the voting public had any inkling that it was adopting a substantive component to due process when it ratified those drafts of the Constitution.
 

 Third, whatever interpretation the United States Supreme Court has adopted for the Due Process Clauses of the Fifth and Fourteenth Amendments of the Constitution of the
 
 United States
 
 does not bind us in determining the meaning of the Due Process Clause of the Constitution of
 
 Virginia
 
 . Just as it remains the duty of the United States Supreme Court to interpret the text of the Constitution of the United States, our duty as the highest court in Virginia is to reach our own conclusion with respect to the meaning of Virginia's foundational charter of government.
 

 Of course, we would be wise to consult persuasive precedent from other courts, including the United States Supreme Court, when those courts have construed textually similar or identical clauses. Substantive due process made its debut in the jurisprudence of the United States Supreme Court, infamously enough, in the
 
 Dred Scott
 
 case. Although it did not receive pride of place, it was offered as a rationale for the court's conclusion.
 
 See
 

 Dred Scott v. Sandford
 
 ,
 
 60 U.S. 393
 
 , 450,
 
 19 How. 393
 
 ,
 
 15 L.Ed. 691
 
 (1857). Following that decision, the concept of substantive due process lay dormant for a time, only to be revived during the
 
 Lochner
 

 [1]
 
 era as a device to strike down, albeit unevenly, reforms aimed at ameliorating what were often dismal working conditions (as well as, it must be conceded, special interest legislation designed to squelch competition). The Court ultimately disavowed this line of jurisprudence,
 
 see, e.g.,
 

 United States v. Carolene Products Co.
 
 ,
 
 304 U.S. 144
 
 , 152,
 
 58 S.Ct. 778
 
 ,
 
 82 L.Ed. 1234
 
 (1938), but not the idea of substantive due process. Having made its peace with economic legislation, shape-shifting substantive due process has now found new form as a device to invalidate a different kind of disfavored legislation, usually by slender majorities.
 
 See
 

 Lawrence v. Texas
 
 ,
 
 539 U.S. 558
 
 ,
 
 123 S.Ct. 2472
 
 ,
 
 156 L.Ed.2d 508
 
 (2003) ;
 
 Obergefell v. Hodges
 
 , 576 U.S. ----,
 
 135 S.Ct. 2584
 
 ,
 
 192 L.Ed.2d 609
 
 (2015).
 

 The United States Supreme Court has struggled to develop a rationale that would justify relying on substantive due process to strike down laws enacted by the people's elected representatives. In
 
 Washington v. Glucksberg
 
 ,
 
 521 U.S. 702
 
 , 703,
 
 117 S.Ct. 2258
 
 ,
 
 138 L.Ed.2d 772
 
 (1997), the Court attempted such a justification, holding that substantive due process protects fundamental rights "which are, objectively, deeply rooted in this Nation's history and tradition." In short order, however, the Court proceeded to side-step this limiting principle.
 
 See, e.g.
 
 ,
 
 Lawrence
 
 ,
 
 539 U.S. 558
 
 ,
 
 123 S.Ct. 2472
 
 ;
 
 Obergefell
 
 , 576 U.S. at ----,
 
 135 S.Ct. 2584
 
 .
 

 To summarize, then, the United States Supreme Court deployed substantive due process in
 
 Dred Scott
 
 , and came to regret it; relied on substantive due process anew in the
 
 Lochner
 
 era, and again came to regret it; and to the regret of a vocal minority of the Court, has once more deployed it in our time. If the absence of any textual or historical support for the concept were not enough to persuade me that we should not embrace substantive
 due process as part of Virginia's constitutional jurisprudence, a review of the United States Supreme Court's jurisprudence convinces me that we ought to leave "substantive" due process and its shabby and disorganized baggage train across the Potomac.
 

 As Virginia's Supreme Court, we must uphold the Constitution of Virginia and the individual rights it protects. If, upon a careful inquiry, some of the clauses of our Declaration of Rights are found to offer more protection than the protections found in the Constitution of the United States, including the religious liberty and economic liberty rights devalued in modern federal jurisprudence,
 
 [2]
 
 we should do our duty and honor the original public meaning of those provisions. Our exercise of the awesome but limited power of judicial review, however, should be undertaken without saddling the Constitution of Virginia with "substantive" due process.
 

 Lochner v. New York
 
 ,
 
 198 U.S. 45
 
 , 53-54,
 
 25 S.Ct. 539
 
 ,
 
 49 L.Ed. 937
 
 (1905).
 

 See
 
 Va. Const. art. I, § 1 (listing "the means of acquiring and possessing property" as an "inherent right"); Va. Const. art. I, § 16 ("[A]ll men are equally entitled to the free exercise of religion, according to the dictates of conscience.").